UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROBERT WILLIAM NEAS,

    Plaintiff,

  v.            Case No. 18-C-1140

ERIC KOEHLER,

    Defendant.

---

## DECISION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

---

  Plaintiff Robert Neas, who is a former Wisconsin state prisoner representing himself, filed a complaint under 42 U.S.C. § 1983. I screened the complaint and allowed Plaintiff to proceed on an Eighth Amendment claim against Defendant. Defendant moves for summary judgment. Dkt. No. 20. The motion is fully briefed and before this court for decision.

### BACKGROUND

  The facts are taken from Defendant's Proposed Findings of Fact and Declarations in Support. Dkt. Nos. 22–25. Plaintiff did not respond to Defendant's facts or submit his own proposed findings of fact. I will therefore deem Defendant's facts admitted for purposes of this decision. *See* Fed. R. Civ. P. 56(e); Civil L. R. 56(b)(4); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

### A. The Parties

  Plaintiff is a former inmate of several different Wisconsin correctional institutions and a former patient of the Winnebago Mental Health Institute (WMHI). Dkt. No. 1, ¶ 1. He was

incarcerated at Oshkosh Correctional Institution when he filed his complaint. Dkt. No. 1 at 5. He is currently an inmate at the La Crosse County Jail in La Crosse, Wisconsin. Dkt. No. 37-1. Plaintiff sues Defendant Eric Koehler, a Unit Manager at WMHI, for allegedly ignoring an injury he suffered after he tripped on dirt outside WMHI in August 2012 and overmedicating him for six months thereafter. Dkt. No. 22, ¶ 1; Dkt. No. 15 at 3.

On October 8, 2009, Plaintiff was found "Guilty but Not Guilty Due to Mental Disease/Defect" of burglary of a building or dwelling. Dkt. No. 22, ¶ 10; Dkt. No. 25-1. He was sentenced to three years and six months' commitment at WMHI. Dkt. No. 22, ¶ 10; Dkt. No. 25-1.

**B. Plaintiff's Grievances**

The Wisconsin Department of Corrections has established the Inmate Complaint Review System (ICRS) to provide inmates in institutions "a mechanism to file complaints related to significant issues regarding rules, living conditions and staff actions affecting institution environment." Dkt. No. 23, ¶ 3 (citing Wis. Admin. Code § DOC 310). The Division of Mental Health and Substance Abuse Services of the Wisconsin Department of Health Services does not use the ICRS to handle grievances of patients at mental health facilities or inpatient institutions. Dkt. No. 22, ¶ 2; Dkt. No. 24, ¶ 3. These patients instead must follow a four-stage grievance process established by Division Directive 20-01.00. Dkt. No. 22, ¶ 2; Dkt. No. 24, ¶ 3; Dkt. No. 24-1. All Department of Health Services patient grievances are stored in a Grievance Resolution Information Tracking System (or GRITS). Dkt. No. 24, ¶ 4.

Plaintiff filed a grievance on March 23, 2012, about a fall he suffered on March 16, 2012. Dkt. No. 22, ¶ 3; Dkt. No. 24-2 at 1. Plaintiff complained that he did not receive treatment from a doctor and that "Nurse Dave, and Sonopy" stressed him out, harassed him, confined him to the dayroom, and took away his tea and caffeinated beverages. Dkt. No. 22, ¶ 3; Dkt. No. 24-2 at 1.

2

There are no allegations against a unit manager named Eric. Dkt. No. 24-2 at 1. An investigation into Plaintiff's grievance determined that Plaintiff had informed "Physical Therapist Eric" that his neck pain improved after receiving treatment. *Id.* The investigation concluded that Plaintiff's grievance did not rise to the level of a violation. *Id.* at 2. Plaintiff did not appeal that determination. Dkt. No. 22, ¶ 4.

Plaintiff filed a grievance on June 19, 2012, against a unit supervisor named "Dave" and "DJ Doc," in which he included several complaints. Dkt. No. 22, ¶ 5; Dkt. No. 24-2 at 3. He alleged that he threatened to file a lawsuit about the fall he suffered on March 16, 2012, and was punished by being confined to the dayroom and having his tea and medications taken from him. Dkt. No. 22, ¶ 5; Dkt. No. 24-2 at 3. An investigation into Plaintiff's grievance determined that Plaintiff had attended "a few sessions" with Physical Therapist Eric, who informed the investigator that he provided Plaintiff a seat cushion and a follow-up evaluation. Dkt. No. 24-2 at 4. The investigation concluded that Plaintiff's grievance did not rise to the level of a violation. *Id.* at 5. Plaintiff appealed the denial of his grievance to Stages 2 and 3. Dkt. No. 22, ¶ 6; Dkt. No. 24-2 at 7–21. Those appeals were denied, and Plaintiff did not further appeal to Stage 4. Dkt. No. 22, ¶ 6; Dkt. No. 24-2 at 7–21.

Plaintiff filed two other grievances about his medical care at WMHI. Dkt. No. 24-2 at 27–30. He filed the first on December 17, 2012, complaining about pain from hemorrhoids and concerns with his neck and nose. *Id.* at 27. This grievance mentions "pt Eark," who treated his neck issues. *Id.* The investigator followed up with medical staff at WMHI, and Plaintiff was sent for an outside consultation with an ear, nose, and throat doctor. *Id.* at 28. Plaintiff filed the other grievance on January 28, 2013, complaining about having medication taken from him and requesting neck treatment from an outside specialist. *Id.* at 29. He again mentions "ASP Eark"

3

but does not allege that person took his medication or is responsible for his continuing neck issues. *Id.* The complaint was rejected after an investigation, and there is no evidence Plaintiff appealed beyond Stage 1. *Id.* at 29–30. Neither complaint mentions a unit manager named Eric or Plaintiff's alleged fall.

Plaintiff did not file any other grievances related to the March 16, 2012, fall or any other fall while at WMHI. Dkt. No. 22, ¶ 7. He at no point filed a grievance about a fall or improper treatment that occurred in August 2012. *Id.*, ¶ 8. Nor did Plaintiff file any inmate complaints through the ICRS system related to his fall or improper treatment in August 2012. *Id.*, ¶ 9.

**ANALYSIS**

**A. Legal Standard**

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

**B. Exhaustion**

Under the Prison Litigation Reform Act (PLRA), a prisoner in a jail, prison, or other correctional facility cannot assert a cause of action "with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the [institution's] policy," *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (citing *Woodford*, 548 U.S. at 93). Exhaustion is an affirmative defense, and Defendant bears the burden of proving that Plaintiff failed to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

Plaintiff's grievances did not need to comply with the ICRS because he was not in the custody of a Department of Corrections institution when he submitted the relevant grievances or suffered his alleged injury. *See* Wis. Admin. Code § 310.02(1) (noting that Chapter DOC 310 "applies to all inmates in the department's legal custody"). The WMHI is not a Wisconsin Department of Corrections institution but is under the purview of the Wisconsin Department of Health Services. *See Winnebago Mental Health Institute*, WIS. DEPT. OF HEALTH SERVS., https://www.dhs.wisconsin.gov/wmhi/index.htm (last visited Sept. 23, 2020). Plaintiff was therefore required to follow the four-stage process of Division Directive 20-01.00.

5

Division Directive 20-01.00 applies to all "clients," which is given the same meaning as "patient" under Wis. Stat. § 51.61(1) and "includes anyone receiving services from a state-operated facility." Dkt. No. 24-1 at 1 (Division Directive 20-01.00(III)(A)). Wisconsin Statute § 51.61(1) defines "patient" as

> any individual who is receiving services for mental illness, developmental disabilities, alcoholism or drug dependency, including any individual who is admitted to a treatment facility . . . or who is detained, committed or placed under this chapter . . . or who is transferred to a treatment facility . . . or who is receiving care or treatment for those conditions through the department or a county department . . . or in a private treatment facility.

Wis. Stat. § 51.61(1). Plaintiff does not contest that he is a "client" as defined under Division Directive 20-01.00(III)(A).

What is less clear, however, is whether 42 U.S.C. § 1997e(a) applies to Plaintiff. Plaintiff was a prisoner at Oshkosh Correctional Institution when he filed his complaint. But he seeks to sue not for conditions at that prison but for mistreatment he allegedly suffered in 2012 while committed to the custody of the WMHI. Section 1997e(h) defines "prisoner" as "any person incarcerated or detained *in any facility* who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h) (emphasis added).

As noted, Plaintiff was found guilty but not guilty by reason of mental disease or defect and committed to serve a sentence of three years and six months at WMHI. Wisconsin law provides for a procedural bifurcation of pleas of not guilty and not guilty by reason of mental disease or defect. Wis. Stat. § 971.165(1). A judge or jury must first determine whether the defendant is guilty of the crime before then determining whether the plaintiff is not guilty because of his mental disease or defect. *Id.* § 971.165(1)(a), (3)(b). That Plaintiff was found not guilty at the second stage means he was first adjudged guilty of the crime, but the judge or jury determined

6

him not guilty because of mental disease or defect. Based on that finding, Plaintiff was "sentenced for . . . violations of criminal law" and committed to a facility (albeit not a correctional facility) to serve that sentence. *See id.* (Judicial Council Note, 1987). Therefore, whether looking to Plaintiff's status at the time he filed his complaint or at the time of the events alleged in the complaint, Plaintiff was a "prisoner" under 42 U.S.C. § 1997e(h) subject to the PLRA's exhaustion requirement. *See, e.g.*, *Taylor v. Craig*, No. 19-CV-01317-NJR, 2020 WL 4334951, at *1 (S.D. Ill. July 28, 2020) (citing *Kalinowski v. Bond*, 358 F.3d 978, 979 (7th Cir. 2004)) (concluding that plaintiff, a pretrial detainee at a mental health facility when he filed his § 1983 suit, was a "prisoner" under the PLRA and subject to its exhaustion requirement).

It is undisputed that Plaintiff did not file any grievances about his alleged August 2012 fall. The only grievances he submitted about a fall relate to one he suffered on March 16, 2012. Even if these two falls were one and the same, and Plaintiff merely has his dates wrong, Plaintiff did not fully exhaust his administrative remedies for either grievance addressing the March 16, 2012 fall because he did not appeal either grievance through the full four-stage grievance procedure under Division Directive 20-01.00. Even had Plaintiff fully appealed either of those grievances, neither alleges any misconduct by Defendant or anyone named Eric. The investigations of each grievance note contact with a physical therapist named Eric, who Plaintiff sought to proceed against in his amended complaint. Dkt. No. 10. But I did not permit Plaintiff to proceed against Physical Therapist Eric in this lawsuit. Dkt. No. 15 at 7. Moreover, Plaintiff's grievances do not allege misconduct by Physical Therapist Eric, either.

In short, the undisputed evidence shows Plaintiff was subject to the PLRA's exhaustion requirement. He failed to comply with that requirement for his claim against Defendant before filing this lawsuit. Defendant is therefore entitled to judgment as a matter of law, and this case

must be dismissed without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (explaining that "*all* dismissals under § 1997e(a) should be without prejudice").

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment, Dkt. No. 20, is **GRANTED**, and this case is **DISMISSED without prejudice**.

Dated at Green Bay, Wisconsin this 23rd day of September, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.